STATE of Utah, Plaintiff and Appellee,

v.

Emilio BELTRAN–FELIX, Defendant and Appellant.

No. 950341–CA.

Court of Appeals of Utah.

July 5, 1996.

Kent E. Snider, Ogden, for Appellant.

Jan Graham and J. Frederick Voros, Salt Lake City, for Appellee.

Paul G. Cassell and Scott Daniels, Salt Lake City, for Amicus Curiae. [1]

Before BENCH, BILLINGS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Emilio Beltran–Felix (defendant) appeals his jury conviction on the grounds that the presence in court of one of the crime victims, throughout the trial, violated his Fifth Amendment right to a fair trial. Defendant also argues there was insufficient evidence to submit the charge of aggravated sexual assault to the jury, and that the trial court failed to make an adequate record in support of sentencing, and misapplied the weapons sentence enhancement statute. We affirm on all except the sentencing issues.

## BACKGROUND [2]

On April 18, 1994, defendant and his companion, Jose Estrada, entered a jewelry store

---

1. Pursuant to the consent of the parties, Utah Code Ann. § 77–38–11(2)(a)(ii) (Supp.1995), and Utah Rule of Appellate Procedure 25, an amicus curiae brief was filed on behalf of several interested parties. To the extent the analysis offered by the amicus is considered in this opinion, it is treated as offered by the State.

2. In reviewing a jury verdict, the evidence, and all reasonable inferences to be drawn therefrom, are viewed in a light most favorable to the verdict. *State v. Dunn*, 850 P.2d 1201, 1205 (Utah 1993). The facts are recited accordingly. *Id.* at 1205–06.

in South Ogden, Utah. Defendant displayed a semi-automatic handgun, and Estrada brandished a folding knife with a six or seven-inch blade. Defendant and Estrada forced all four of the employees on the premises, along with a jewelry wholesaler who entered the store during the robbery, into a back room and tied them up.

While defendant remained in the store showroom, Estrada, in the presence of the other four victims, sexually assaulted and raped one of the store employees, G.L. Estrada then left the back room, and a few moments later defendant walked into the room. Defendant held the gun to G.L.'s head and forced her to perform oral sex on him. Defendant and Estrada also assaulted other persons present in the store, by kicking, choking, or hitting them. They left the store with approximately $380,000 worth of gems and jewelry, cash from the register, and one victim's wallet and watch. Police later arrested defendant and Estrada, and they were charged with various offenses.

On January 1, 1995, prior to trial, an amendment to the Utah Constitution became effective (the Victims' Rights Amendment). *See* Utah Const. art. I, § 28. The Victims' Rights Amendment, along with its implementing legislation (the Victims' Rights Act), provides that the victim of a crime has a right to be present at important criminal hearings, including trials, involving the crime in which they were victimized. *See* Utah Const. art. I, § 28; Utah Code Ann. §§ 77-38-2(5) & 4(1) (Supp.1995).

Before trial commenced, the prosecutor informed the trial court that G.L. wished to be present during the trial and that she had the right to be present under the Victims' Rights Amendment and the Victims' Rights Act. Defense counsel objected on the grounds "there may be some constitutional challenge under the United States Constitution, probably under the [Fifth] Amendment." The trial court denied the objection and G.L. remained in the courtroom throughout the trial. G.L. also testified at defendant's trial as the State's last witness. The jury returned a guilty verdict against both defendant and Estrada on all charges.

The trial court imposed on defendant a sentence of fifteen years for each of five counts of aggravated kidnaping, to run consecutively. The trial court also imposed a sentence of fifteen years for each of two counts of aggravated sexual assault, again to run consecutively. These sentences represented the maximum possible penalty for aggravated kidnaping and aggravated sexual assault. The trial court also imposed a five year weapon enhancement sentence for each of three aggravated robbery sentences, pursuant to Utah Code Ann. § 76-3-203(1) (Supp.1995), describing the resulting sentence as "[ten] years to life."

## ISSUES

On appeal, we address the following issues: (1) Were defendant's constitutional rights under the Fifth Amendment of the United States Constitution violated by the victim's presence during trial; (2) did the trial court properly refuse to dismiss the charge of aggravated sexual assault; (3) did the trial court err in failing to state the reasons for imposing the highest minimum mandatory sentence; and (4) did the trial court err in its application of the mandatory firearm sentence enhancement statute?

## ANALYSIS

### Constitutionality of the Victims' Rights Provisions

G.L. was allowed to remain in the courtroom throughout trial under the recent declaration of the rights of crime victims in the Victims' Rights Amendment to the Utah Constitution and its implementing legislation. Article I, Section 28 of the Utah Constitution provides, in relevant part:

(1) To preserve and protect victims' rights to justice and due process, victims of crimes have these rights, as defined by law:

. . . .

(b) Upon request, to be informed of, *be present at,* and to be heard at *important criminal justice hearings related to the victim,* either in person or through a lawful representative, once a criminal in-

formation or indictment charging a crime has been publicly filed in court ...

....

(4) The Legislature shall have the power to enforce and define this section by statute.

Utah Const. art. I, § 28 (emphasis added). Pursuant to Article I, Section 28(4) of the Utah Constitution, the legislature passed the Victims' Rights Act. *See* Utah Code Ann. §§ 77–38–1 to –14 (1995 & Supp.1995). Under the Victims' Rights Act, "[t]he victim of a crime shall have the right to be present at the important criminal or juvenile justice hearings." [3] *Id.* § 77–38–4(1). The term "important criminal justice hearings" includes "any criminal or delinquency trial." *Id.* § 77–38–2(5)(e). Accordingly, G.L.'s presence was proper under the Victims' Rights Amendment and the Victims' Rights Act.

On appeal, defendant contends that G.L.'s presence in the courtroom during the entire trial, and her testimony as the last witness for the State, violated his "[c]onstitutional rights to due process under the [F]ifth, [S]ixth and [F]ourteenth amendments of the United States Constitution." However, at trial, defendant objected only on Fifth Amendment grounds. *See State v. Shickles,* 760 P.2d 291, 301 (Utah 1988) ("An objection must be both timely and specific."); *see also State v. Rangel,* 866 P.2d 607, 611 (Utah App.1993) ("It is well established that 'a contemporaneous objection or some form of *specific* preservation of claims of error must be made a part of the trial court record before an appellate court will review such claim on appeal.'" (quoting *State v. Johnson,* 774 P.2d 1141, 1144 (Utah 1989))). In addition, defendant has not provided any separate argument or analysis in his brief on the Sixth or Fourteenth Amendments. *See State v. Wareham,* 772 P.2d 960, 966 (Utah 1989) (declining to rule on constitutionality of statute where brief "wholly lacks legal analysis and authori-

ty to support" argument). Therefore, we address only the Fifth Amendment challenge.

■■ "Defendant is guaranteed the right to a fair trial by the [F]ifth ... amendment[ ] to the United States Constitution." *State v. Boone,* 820 P.2d 930, 932 (Utah App.1991) (footnote omitted). "However, defendant bears the burden of proof in establishing he was denied a fair trial." *Id.* (footnote omitted); *cf. State v. McGrath,* 749 P.2d 631, 634 (Utah 1988) ("When an exclusion order has been violated, the burden is on the accused to demonstrate that he has been prejudiced to the extent that a mistrial should be granted."); *State v. Carlson,* 635 P.2d 72, 74 (Utah 1981) (placing burden on defendant to show prejudice where prosecutor talked to two witnesses together in violation of exclusion order); *State v. Dodge,* 564 P.2d 312, 313 (Utah 1977) (placing burden on defendant to show prejudice where witnesses were observed discussing case in violation of exclusion order).

■■ Both parties appear to agree that the Victims' Rights Amendment and Victims' Rights Act are not facially unconstitutional under the Fifth Amendment, a position supported, at least inferentially, by numerous authorities. *See Bell v. Duckworth,* 861 F.2d 169, 170 (7th Cir.1988) ("A refusal to exclude ('separate') witnesses until they testify is not a denial of due process."), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989); *Willis v. Kemp,* 838 F.2d 1510, 1523 (11th Cir.1988) (finding no error in trial court's refusal to remove victim's young son, noting that "[p]etitioner cites no authority for the proposition that due process requires that in a capital sentencing proceeding, the defendant has a constitutional right to have removed from the courtroom spectators whose presence may remind the jury of the victim."), *cert. denied sub nom. Willis v. Zant,* 489 U.S. 1059, 109 S.Ct. 1328, 103

---

**3.** The Victims' Rights Act further notes that "[t]he right of a victim or representative of a victim to be present at trial is subject to Rule 615 of the Utah Rules of Evidence." Utah Code Ann. § 77–38–4(3) (Supp.1995). Rule 615, which allows a party to exclude witnesses "so that they cannot hear the testimony of other witnesses,"

does not authorize exclusion of "an adult victim in a criminal trial where the prosecutor agrees with the victim's presence." Utah R. Evid. 615. In this case, the prosecutor agreed with G.L.'s presence. Accordingly, it is not necessary to address the exception to the statute created by Rule 615.

L.Ed.2d 596 (1989); *Mathis v. Wainwright*, 351 F.2d 489 (5th Cir.1965) (refusing to grant habeas relief on grounds that trial court refused to sequester witnesses, noting that "such denial does not amount to a deprivation of [defendant's] constitutional rights"), *cert. denied*, 384 U.S. 1009, 86 S.Ct. 1960, 16 L.Ed.2d 1021 (1966); *Stephens v. State*, 290 Ark. 440, 720 S.W.2d 301, 303 (1986) ("Nothing in the constitution touches on the exclusion of witnesses during criminal trials."); *State v. Harrell*, 67 N.C.App. 57, 312 S.E.2d 230, 236 (1984) ("Due process does not automatically require separation of witnesses who are to testify to the same set of facts."); *Rucker v. Tollett*, 4 Tenn.Crim.App. 672, 475 S.W.2d 207, 208 (1971) (finding trial court's refusal to exclude witnesses from the courtroom "raises no constitutional question"). Our research reveals no authority to the contrary. *See, e.g. Wheeler v. State*, 88 Md. App. 512, 596 A.2d 78, 88 n. 16 (1991) (noting that "[w]e have found no federal or state constitutional provisions establishing sequestration as a constitutional right under either [the state or federal] constitution."). Accordingly, because there is no constitutional right to require exclusion or sequestration of witnesses, the Victims' Rights provisions do not, on their face, violate the Fifth Amendment.

■ However, defendant argues that the Victims' Rights Amendment and Victims' Rights Act, as applied, denied him the right to a fair trial. Neither party disputes that a disruptive witness may, under certain circumstances, deprive a criminal defendant of a fair trial. *See Boone*, 820 P.2d at 933–34 (discussing cases). Both parties agree that G.L.'s behavior was appropriate, and it is not

the basis for this appeal. Instead, defendant argues that G.L.'s testimony as the last witness for the State—after she had been present during the testimony of all of the State's other witnesses—when combined with certain remarks by the prosecutor, had the cumulative effect of denying him a fair trial.

This court's decision in *State v. Rangel*, 866 P.2d 607 (Utah App.1993), provides the framework for considering this issue.[4] In *Rangel*, this court addressed a similar issue, the constitutionality of Utah Rule of Evidence 615 as applied, when, although the victim was the first witness for the State, she also later testified in rebuttal after remaining in the courtroom during the presentation of all of the State's other witnesses.[5] *Id.* at 610–11. The defendant contended that allowing the victim to testify at the beginning and the end of the State's case allowed her to conform her testimony to that of the other witnesses. *Id.* at 612.

We begin by noting defendant's claim is one of procedural due process, for which the general test is that of fairness. *Id.* (citing *Wells v. Children's Aid Soc'y*, 681 P.2d 199, 204 (Utah 1984)). In applying the due process fairness test, the *Rangel* court rejected the defendant's argument, finding no prejudice occurred because the victim "did not conform her testimony to the testimony of the other witnesses. Rather, she simply clarified and added to her testimony from the day before on topics not covered by any other witness." *Id.*

■ The State argues that under a similar analysis, defendant was not prejudiced by G.L.'s presence throughout trial. Defendant

---

4. Both parties discussed *State v. Cosey*, 873 P.2d 1177 (Utah App.), *cert. denied*, 883 P.2d 1359 (Utah 1994), in their briefs. In *Cosey*, this court addressed the conflict between Rule 615, which allows an adult crime victim to remain in the courtroom during trial with the prosecutor's consent, and Utah Code Ann. § 78–7–4 (1992), which places the decision on whether to allow the victim to remain in the courtroom squarely within the trial court's discretion. *Cosey*, 873 P.2d at 1180–81. *Cosey* held that Rule 615 takes precedence over § 78–7–4, thus removing the trial court's discretion over whether to exclude an adult crime victim who has the prosecutor's consent to be present during trial. *Cosey*, 873 P.2d at 1181. However, both parties agree that *Cosey* is not applicable to the case at hand,

because in *Cosey* the victim did not testify after observing the testimony of the other witnesses. In fact, *Cosey* explicitly declined to consider the issue now before us, noting that "[w]e express no opinion on the constitutionality of Rule 615 in a situation where the victim remains in the courtroom but testifies after having the opportunity to hear and observe the testimony of other material witnesses." *Id.*

5. The court "decline[d] to address the facial constitutionality of Rule 615 because defendant ha[d] raised it for the first time on appeal." *State v. Rangel*, 866 P.2d 607, 612 (Utah App. 1993).

must show more than the mere possibility that G.L. conformed her testimony to that of the other witnesses because, as noted previously, "defendant bears the burden of proof in establishing he was denied a fair trial." *Boone*, 820 P.2d at 932. Defendant offers only a single reference to G.L.'s testimony to support his assertion that her testimony was tailored to support the State's case. Defendant asserts that both G.L. and another witness testified that the witness moved away from G.L. during the sexual assault, because the witness was embarrassed and uncomfortable. Therefore, defendant argues, this testimony demonstrates that G.L.'s testimony differed from what it would have been had she been sequestered, because G.L. could not have known the actual reason the witness moved away. However, it is impossible to conceive how this single and relatively insignificant instance could have influenced the jury so as to deny defendant's right to a fair trial. There is no suggestion that the critical elements of the case turned upon G.L.'s testimony, or that any of G.L.'s other testimony was revised to conform with that of the earlier witnesses.

■ Moreover, defendant's assertion that the prosecutor's reference to G.L. as "our victim," and the possible implication that G.L. was somehow required to attend trial and therefore endure the pain of reliving the crime, does not change this result. Without engaging in an unnecessary analysis regarding prosecutorial misconduct, we simply observe that the prosecutor's actions did not exceed acceptable trial tactics, and unwarranted implications drawn from a prosecutor's statements in appellate briefs by creative counsel, without evidence of actual prejudice, do not create constitutional error. Accordingly, we hold that defendant has not met his burden, and the Victims' Rights Amendment and Victims' Rights Act were not unconstitutional as applied.[6]

· Sufficiency of the Evidence

Defendant was charged with one count of aggravated sexual assault under Utah Code Ann. § 76-2-202 (1995) and Utah Code Ann. § 76-5-405 (1995), on the grounds that he "encouraged or intentionally aided Estrada to rape" G.L..[7] At the close of the State's case, defendant made a motion to dismiss the count on the grounds that he "was not present in the room when the rape was initiated or did not return to the room until afterwards." The trial court denied the motion.

■ In reviewing a trial court's decision to submit a case to the jury, a deferential standard of review is applied.

> In determining whether there is sufficient evidence to send a case to the jury ... appellate courts should "uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, [the court] conclude[s] that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt."

*State v. Taylor*, 884 P.2d 1293, 1296 (Utah App.1994) (quoting *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989) (alterations in origi-

---

6. We are concerned our analysis may give rise to constitutional challenge every time a victim is allowed to remain in the courtroom during a criminal trial. Accordingly, we reiterate the observation made in *Rangel*, that "inconsistent statements of witnesses, whether they be by the actual victim or others, are in many cases simply a credibility factor that the finder of fact must weigh in determining the outcome." *Rangel*, 866 P.2d at 612 n. 6. Other Utah cases support this type of analysis, although none of them explicitly considered constitutional issues. *See State v. Bonza*, 72 Utah 177, 269 P. 480, 482 (1928) (finding no prejudice from trial court's refusal to exclude sister of rape victim from courtroom, noting "[t]here is no absolute right to have witnesses excluded during the progress of a trial."); *see also State v. Moore*, 111 Utah 458,

183 P.2d 973, 977 (1947) (finding no prejudice from presence of rape victim throughout trial where she was first witness and her subsequent rebuttal testimony "merely categorically denied certain testimony"); *State v. Smith*, 90 Utah 482, 62 P.2d 1110, 1116 (1936) (finding no abuse of discretion where trial court allowed witness who violated exclusion order to testify); *State v. Green*, 89 Utah 437, 57 P.2d 750, 754 (1936) (finding no prejudice where witness who violated exclusion order referred to testimony of earlier witness in own testimony).

7. Defendant was also charged with and convicted on one count of aggravated sexual assault based upon his own conduct, which he does not appeal.

**36**

nal)). In addition, "the evidence is to be viewed in a light most favorable to the State." *Id.*

■ Defendant was convicted, in part, under the accomplice liability statute, which provides:

> Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, *encourages, or intentionally aids another person to engage in conduct which constitutes an offense* shall be criminally liable as a party for such conduct.

Utah Code Ann. § 76–2–202 (Utah 1995) (emphasis added).

Defendant argues that the "statute specifically requires that a person has to act with the mental state required to commit the offense" and that "the State failed to prove that the appellant acted with any mental state required by the statute." This reasoning is apparently based upon the fact that defendant was not present during Estrada's sexual assault on G.L.

The State responds by arguing that defendant did not need to be physically present to intentionally aid Estrada in the rape. The State relies upon *State v. Cayer*, 814 P.2d 604 (Utah App.1991). In *Cayer*, the victim was beaten by a group of men while the defendant remained inside a trailer and prevented the victim's friend from going to the victim's aid. *Id.* at 607, 612. The defendant was convicted under the accomplice liability statute and appealed on the grounds that there was insufficient evidence to support the jury verdict. *Id.* at 608. Despite the fact that the defendant was not present during the beating, this court found the evidence sufficient to support the jury verdict, reasoning as follows:

> The evidence presented at trial showed that defendant, along with the other three men, barged into [the victim's] trailer. Defendant remained inside the trailer with [the victim's friend], while the other three forced [the victim] outside and began beating him. Defendant prevented [the victim's friend] from going outside to help

[the victim] by hitting [him] every time he attempted to get up. *A jury could reasonably conclude this conduct by defendant aided his friends in the beating death of [the victim].*

> . . . . Additionally, *a reasonable jury could infer that defendant had the requisite mental state for the offense.* He made no attempt to aid the victim either by seeking help from the other employees at the camp site, or by intervening on the victim's behalf.

*Id.* at 612 (emphasis added); *see also State v. Murphy*, 26 Utah 2d 330, 489 P.2d 430, 432 (1971) (upholding conviction under predecessor to section 76–2–202 where defendant was outside of store when robbery occurred); *State v. Johnson*, 6 Utah 2d 29, 305 P.2d 488, 489 (1956) (upholding conviction under predecessor to section 76–2–202 where defendant was seen in vicinity of crime).

Viewing the evidence in a light most favorable to the jury verdict, we believe the jury could properly have inferred that defendant intentionally aided Estrada in the sexual assault. As in *Cayer*, the jury could infer that defendant's presence in the front of the jewelry store was to prevent interference with Estrada's sexual assault on G.L. Furthermore, whereas the jury in *Cayer* was allowed to infer the appropriate mental state from mere inaction and failure to intervene on the victim's behalf, defendant's actions here may indicate a higher degree of culpability, because he entered the room and proceeded to sexually assault G.L. himself after Estrada had completed his assault. Accordingly, the trial court did not err in refusing to dismiss the charge of aggravated sexual assault.

### Sufficiency of Findings in Support of Sentence

■ The sentences imposed by the trial court included the maximum possible penalty allowed under Utah law for aggravated sexual assault and aggravated kidnaping, which the trial court chose from three possible sentences allowed by statute. *See* Utah Code Ann. § 76–5–405 (1995) and Utah Code Ann. § 76–5–302 (1995).[8] The trial court's discre-

---

**8.** Both statutes were amended in 1995, substituting "an indeterminate term" for the minimum

tion in choosing among the sentencing possibilities is limited by Utah Code Ann. § 76–3–201, which provides, in relevant part:

> (6)(a) If a statute under which the defendant was convicted mandates that one of three stated minimum terms shall be imposed, the court shall order imposition of the term of middle severity unless there are circumstances in aggravation or mitigation of the crime.
>
> . . . .
>
> (d) *The court shall set forth on the record the facts supporting and reasons for imposing the upper or lower term*
>
> . . . .
>
> (7). . . .
>
> (b)(i) *The court shall state the reasons for its choice of sentence on the record at the time of sentencing.*

Utah Code Ann. § 76–3–201 (Supp.1995) (emphasis added).[9] Based upon this statute, defendant argues that the trial court abused its discretion by failing to make a record of the reasons for imposing the maximum sentences. However, defendant did not object to the trial court's failure to make the statutorily required findings.

Although the State concedes that the trial court failed to make a record in support of sentencing, it argues both that defendant waived any error by failing to object and that this court should imply the requisite facts because "[a] finding may be implied if it is clear from the record, and therefore apparent upon review, that the finding was actually made as part of the tribunal's decision." *Adams v. Board of Review,* 821 P.2d 1, 5 (Utah App.1991). The State argues that aggravating facts may be implied where, as here, there was no mitigating evidence offered before sentencing, and substantial evidence was submitted regarding the aggravating circumstances of the crime.

Resolution of this issue is dictated by the Utah Supreme Court's recent opinion in *State v. Labrum,* 293 Utah Adv.Rep. 19, ——

P.2d ——, 1996 WL 344929 (1996), issued after oral argument in this case. In *Labrum,* the Utah Supreme Court considered whether the trial court's failure to enter findings of fact in support of a gang enhancement, as required by Utah Code Ann. § 76–3–203.1(5)(c), was plain error. *Id.* at 19. In *Labrum,* the trial court imposed the gang enhancement on the defendant's sentence without entering written findings supporting its applicability. *Id.* at 20. As with the case before this court, the defendant did not object to the trial court's failure to enter the appropriate findings. *Id.*

The Utah Supreme Court held that the trial court's failure to enter findings in support of the sentence enhancement was plain error. *Id.* at 19, 21. In reaching this conclusion, the supreme court noted that in regard to minimum mandatory sentencing guidelines, Utah case law "require[s] trial courts to set forth, on the record, aggravating and mitigating factors, regardless of which term of severity was imposed." *Id.* at 21 (citing *State v. Gibbons,* 779 P.2d 1133, 1137 (Utah 1989); *State v. Bell,* 754 P.2d 55, 60 (Utah 1988)). The court also noted that

> [b]ecause this case involves a sentencing error rather than a trial error, the error is obvious on the face of the record and undeniably prejudicial. Indeed, the error was in manifest violation of the statute. Moreover, there is no conceivable strategic reason for defense counsel to consciously avoid bringing the requirements of the statute to the court's attention.

*Id.* These circumstances are identical to those in this case. Accordingly, under *Labrum,* the trial court's failure to enter findings regarding the aggravating circumstances in support of the highest of the three possible sentences was error, and we remand to the trial court for entry of findings in compliance with section 76–3–201.

### Sentence Enhancement

█ Defendant was convicted of three counts of aggravated robbery under Utah

---

mandatory terms of five, ten, or fifteen years. *See* Utah Code Ann. §§ 76–5–302 & 405 (Supp. 1995). Accordingly, this citation is to the earlier versions of the statutes.

9. Portions of § 76–3–201 were amended subsequent to sentencing. Because none of the amendments affect the portions of § 76–3–201 relevant to this appeal, the most recent version of the statute is cited here.

Code Ann. § 76–6–302 (1995). Because defendant used a firearm, he was subject to a sentence enhancement under Utah Code Ann. § 76–3–203 (Supp.1995),[10] which provides:

> A person who has been convicted of a felony may be sentenced to imprisonment for an indeterminate term as follows:
>
> (1) In the case of a felony of the first degree, for a term at not less than five years, unless otherwise specifically provided by law, and which may be for life but *if the trier of fact finds a dangerous weapon ... was used in the commission or furtherance of the felony, the court shall additionally sentence the person convicted for a term of one year to run consecutively and not concurrently; and the court may additionally sentence the person convicted for an indeterminate term not to exceed five years to run consecutively and not concurrently.*

Utah Code Ann. § 76–3–203 (Supp.1995) (emphasis added). Despite the language of the statute, which requires that a five-year enhancement be indeterminate, the trial court added a determinate sentence of five years to each five-year sentence for aggravated robbery, describing the resulting sentence as "[ten] years to life."

A similar situation was addressed in *State v. Willett*, 694 P.2d 601 (Utah 1984), where the Utah Supreme Court noted that under the statute "a mandatory one-year minimum enhancement sentence must be imposed for use of a firearm in cases involving first and second degree felonies. In such cases, the judge's only discretion lies in sentencing *for more than one year but not more than five years.*" *Id.* at 603 (emphasis added).

Both parties agree the trial court erred in imposing a determinate five-year enhancement. Accordingly, defendant asks that this case "be remanded back to the District Court for further sentencing." The State, however, requests that this court modify the judgment, clarifying that the weapon enhancements are for indeterminate terms, not to exceed five years. This request is based upon the

court's "authority to modify criminal judgments on appeal." *State v. Dunn*, 850 P.2d 1201, 1211 (Utah 1993); *see also* Utah R.App. P. 30(b) ("If a judgment of conviction or other order is affirmed or modified, the judgment or order affirmed or modified shall be executed.")

 Nevertheless, although the State is correct in the assertion that this court may correct an improper sentence, the statute requires that the trial court choose between a determinate one-year sentence *or* an indeterminate sentence of one to five years. Because once a defendant is convicted, " 'the matter of sentencing rests entirely within the discretion of the trial court, within the limits prescribed by law,' " *State v. Cobb*, 774 P.2d 1123, 1129 (Utah 1989) (quoting *State v. Jolivet*, 712 P.2d 843, 844 (Utah 1986) (per curiam)), we believe that only the trial court can exercise this discretion. Therefore, we remand this issue to the trial court so that it may clarify the sentence.

## CONCLUSION

Defendant's constitutional challenge to the Victims' Rights Amendment and Victims' Rights Act fails because defendant has not provided evidence sufficient to meet his burden of proof regarding the constitutionality of the law as applied. Furthermore, existing case law compels the conclusion that the Victims' Rights provisions in both the Utah Constitution and the Utah Code, allowing victims to be present at criminal proceedings, are not facially invalid under the Fifth Amendment. Defendant's motion to dismiss the charge of aggravated sexual assault based upon accomplice liability also fails because the jury could properly have inferred the appropriate mental state based upon defendant's acts. Because the trial court committed plain error in failing to enter findings in support of the sentences for aggravated sexual assault and aggravated kidnaping, we remand for entry of findings in compliance with section 76–3–201. Finally, because both parties agree that the trial judge improperly

---

10. Portions of § 76–3–201 were amended subsequent to sentencing. Because none of the amendments affect the relevant portions of § 76– 3–201, we cite to the most recent version of the statute.

imposed determinate five-year sentences under the weapons enhancement statute, this issue is remanded for entry of either determinate one-year sentences, or indeterminate sentences of one to five years.

BENCH and BILLINGS, JJ., concur.