STATE of Utah, Plaintiff and Respondent,

v.

**Denon JONES, Defendant and Appellant.**

No. 15705.

Supreme Court of Utah.

Sept. 27, 1978.

H. Don Sharp, Ogden, for defendant and appellant.

Robert L. Newey, Weber County Atty., Ogden, Robert B. Hansen, Atty. Gen., Michael L. Deamer, Earl F. Dorius, Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

ELLETT, Chief Justice:

This is an appeal from a heroin sale conviction, in a jury trial.

One Annette Stubbs, a known prostitute and runaway, formerly a patient in Provo for two years, was employed to effect a "controlled buy" from Jones, which she did under the surveillance of four look-out police officers, after she had been strip-searched, given two syringes, and $60; had called Jones, made an appointment, entered his home, came out with one empty and one half-filled syringe containing heroin, and with no money, after a second strip-search. The evidence indicated that she had known Jones a long time, had used his home considerably, paying him $5.00 for a room to bring a male for prostitution purposes, using the proceeds to buy heroin, she being an addict.

The only Point on Appeal was Jones' contention that the Court allowed evidence degrading Jones' character.

The offensive statement and testimony were that the Prosecutor opened with a statement to the jury that "the sale of heroin is an obnoxious, disgusting activity". Before questioning Annette, defense counsel moved to limit her testimony and require the State to make a proffer as to its intent and purpose in introducing testimony, which was denied. Counsel conceded there was no entrapment issue, and the prosecutor acknowledged his evidence might have a tendency to influence the jury. She testified she bought drugs from Jones when she first met him, that she was a prostitute, that she acted as prostitute in Jones' house four or five times, where she brought men, giving Jones $5.00 for the use of the room, and using the money she earned to buy heroin from Jones, which practices occurred up to the time Jones was arrested.

Jones says admission of such testimony violated Rule 47,[1] which prohibits evidence of bad conduct, unless a defendant opens the issue by first giving evidence of good conduct (which Jones didn't do); and in violating Rule 55[2] prohibiting evidence of other crimes.

The State says the testimony, if it were inadmissible, was harmless, but insists that it *was* admissible under the exception in Rule 55 allowing testimony to show some other fact, including "absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity." The State cites and quotes from *State v. Lopez*, 22 Utah 2d 257, 451 P.2d 772:

Concededly, evidence of other crimes is not admissible if the purpose is to disgrace the defendant as a person of evil character with a propensity to commit crime and thus likely to have committed the crime charged. However, if the evidence has relevancy to explain the circumstances surrounding the instant crime, it is admissible for that purpose; and the fact that it may tend to connect the defendant with another crime will not render it incompetent. [Id.]

Jones cites and quotes from *State v. Goodliffe*, 578 P.2d 1288 (Utah 1978):

The rules of evidence require rejection of evidence of specific behavior to prove a character trait except evidence of conviction of crime. The rule, of course, is different where the evidence of other crimes or civil wrongs is relevant to prove some other material fact such as motive, opportunity, intent, preparation, plan, knowledge or identity.

Bare, unproven allegations or "complaints" of prior incidents of similar conduct have no relevancy to the issue of defendant's truthfulness or veracity. The admission of such evidence without further explanation could only have caused the jury to speculate about defendant's propensities to commit such crimes and confuse the issues, all to the prejudice of defendant, which necessitates a new trial.

*Goodliffe*, however, was a case where the accused opened up the issue by giving evidence of a good character. The Court sent it back for a new trial on the ground that the state went too far with evidence not pertinent, but which tended toward degrading defendant by evidence of immaterial circumstances thereby intending to impeach the accused as to truth and veracity. It appears that the case, even by way of analogy, would not be pertinent or comparable to the testimony in the present case, where the exception to Rule 55[3] justifies its admission.

In his opening statement counsel for the appellant told the jury about how Mr. Jones had befriended the girl witness: how he had tried to get her to quit the use of drugs etc. He said he might or might not call the defendant to testify. After he had implanted, in the minds of the jurors such a

---

1. Utah Rules of Evidence (1971).

2. Id.

3. Id.

paternalistic attitude on the part of the defendant the prosecution had a right to show exactly what the relationship between the witness and the defendant was. A failure to do so would likely cause the defendant to rest his case without testifying and thereby cause the jury to believe the defendant was an upstanding, law-abiding citizen.

We find no error in the case. The judgment is affirmed.

CROCKETT, MAUGHAN, WILKINS and HALL, JJ., concur.